IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-cr-30042-001 |
| ) | |
| JASON WALKER, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Jason Walker's second pro se motion (d/e 196) and amended motion (d/e 197) for compassionate release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motions are DENIED.

### I. BACKGROUND

On November 7, 2016, Defendant Jason Walker was sentenced to 72 months' imprisonment and a 4-year term of supervised released for conspiring to distribute heroin and 500 grams or more of a mixture or substance of methamphetamine in violation of 21 U.S.C. 841(b)(1)(A). Defendant served his term of imprisonment,

and, on August 3, 2018, he began his term of supervised release.

On October 11, 2018, a petition for revocation was filed seeking to revoke Defendant's term of supervised release. Again, on August 16, 2019, a supplemental petition to revoke was filed with two new violations. On January 9, 2020, Defendant was found in violation of a mandatory condition of his supervised release for criminal trespass to a residence, domestic battery, and aggravated battery. Defendant was sentenced to 50 months' imprisonment and a 3-year term of supervised release. Defendant is currently serving his sentence at FCI Oxford and has a projected release date of October 29, 2020.

On June 2, 2020, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) seeking compassionate release due to his health issues and the COVID-19 pandemic. See d/e 188. On June 23, 2020, this Court denied Defendant's motion for compassionate release because Defendant did not prove that he had any health condition that the CDC recognizes as a high risk factor, FCI Oxford did not have any COVID-19 cases at the facility, and the § 3553(c) factors did not warrant release.

On October 20, 2020, Defendant filed a second pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) seeking compassionate release due to COVID-19 being present at FCI Oxford, his contraction of COVID-19, and his diagnosis of obesity. See d/e 196. On October 26, 2020, following the appointment of counsel to represent Defendant, an amended second motion for compassionate release was filed. See d/e 197. On October 28, 2020, the Government filed a response opposing Defendant's motion. See d/e 201. The Government argues that Defendant has not established extraordinary and compelling reasons to warrant a reduction and Defendant failed to exhaust his administrative remedies or submit another request with the warden at FCI Oxford.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the

Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

In this case, Defendant submitted a compassionate release request to the warden of FCI Oxford prior to the filing of his first compassionate release motion filed with the Court. See First Amended Motion, d/e 191, p. 7. The Government now argues that Defendant is required to submit a second request to the warden of FCI Oxford prior to filing a second motion for compassionate release in this Court. See Response, d/e 201, p. 10. The Court finds that the statutory language of 18 U.S.C. § 3582(c)(1)(A) does not require Defendant to file a second request with the warden of his facility prior to filing a second motion for compassionate release in this Court when the reasons for release are substantially the same. Because Defendant submitted a request for compassionate release to the warden of FCI Oxford more than 30 days ago, the Court finds that Defendant has met the 30-day requirement found in 18 U.S.C. § 3582(c)(1)(A). In the event that Defendant was required to file a second request to his warden, the Court excuses his failure to do so.

The Court must consider whether "extraordinary and

compelling reasons warrant such a reduction" and is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.

FCI Oxford has 67 inmates and 15 staff members who actively have COVID-19. See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed October 29, 2020).  However, the facility has made strides in combating the disease as 526 inmates and 29 staff members have recovered from the COVID-19.  Id.

Defendant previously argued that he suffered from scar tissue on his lungs due to chemical burns from his manufacturing of methamphetamine, high blood pressure, high cholesterol, circulation issues, and high liver enzymes.  See First Amended

Motion, d/e 191.  The Government argued that Defendant has not complained of or been treated for any of these issues while at FCI Oxford.  See Response, d/e 194, pp. 13-14.  However, Defendant has now been diagnosed as being obese with a BMI of 32.4, which places him at a higher risk of serious illness or death if he contracts COVID-19.  See d/e 197, p. 2; see also People at Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 29, 2020) ("People of any age with the following conditions are at increased risk of severe illness from COVID-19:…Obesity (body mass index [BMI] of 30 or higher)….").  Additionally, Defendant may contract COVID-19 again.

While the Court is very sympathetic to Defendant's medical conditions, the Court is concerned that Defendant remains a risk to the community.  The Court must reconsider the factors in § 3553(a).  During his first year of supervised release, Defendant tested positive for an illegal substance, committed criminal trespass to a residence, and was charged with domestic battery in Adams County for grabbing a woman by the hair and dragging her into a

residence.  See d/e 201, pp. 19-20.  While in the Adams County Jail, Defendant committed aggravated battery by striking another inmate in the head multiple times.  Id. at 20.  Defendant recently began the RDAP program at his facility, but he has not completed the program.  The Court commends Defendant's rehabilitation efforts and hopes Defendant continues to improve himself.

Based on the history and characteristics of Defendant and the nature and circumstances of the offense, the Court finds that reconsideration of the factors in § 3553(a) concludes that Defendant is not entitled to compassionate release.

### III. CONCLUSION

For the reasons set forth above, Defendant Jason Walker's second pro se (d/e 196) and amended motion for compassionate release (d/e 197) are DENIED.  The Clerk is DIRECTED to send a copy of this Opinion to FCI Oxford.

ENTER:  October 29, 2020.

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE