## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **JASON WALKER,** | ) |
| | ) |
| **Petitioner-Defendant,** | ) |
| | ) |
| **v.** | )**Criminal Case No. 13-30042** |
| | )**Civil Case No. 20-3138** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent-Plaintiff.** | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on Petitioner Jason Walker's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 189).  For the reasons set forth below, Walker's § 2255 Motion is DENIED.

### I. BACKGROUND

On May 8, 2014, a five-count second superseding indictment was filed charging Jason Walker with conspiracy to distribute 500 grams or more of mixtures or substances containing a detectable amount of methamphetamine and mixtures or substances containing detectable amount of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(C) in Count 1.  See Second

Superseding Indictment, d/e 39.

On September 23, 2014, Walker pled guilty to Count 1 of the Second Superseding Indictment.  On November 7, 2016, Walker was sentenced to 72 months' imprisonment and 4 years of supervised release.  See Judgment, d/e 147.

Walker served his term of imprisonment, and, on August 3, 2018, Walker began his term of supervised release.  On October 11, 2018, a petition to revoke was filed seeking to revoke Walker's term of supervised release for committing the felony offense of criminal trespass to a residence on September 29, 2018, in violation of Walker's mandatory condition against committing another federal, state, or local crime.  The petition alleged that Walker was charged with criminal trespass to a residence in Adams County, Illinois, Circuit Court, Case No. 2018-CF-775.  Thereafter, on August 16, 2019, a supplemental petition to revoke was filed alleging two new law violations.  The supplemental petition alleged that on July 18, 2019, Walker committed the offense of domestic battery, for which Walker was arrested and charged in Adams County, Illinois, Circuit Court, Case No. 2019-CM-253, in violation of Walker's mandatory condition against committing another federal, state, or local crime.

The supplemental petition alleged that Walker "knowingly and
without legal justification made physical contact of an insulting or
provoking nature with Paula Johnson, a family or household
member, in that Mr. Walker grabbed Ms. Johnson by the hair and
dragged her into a residence."  See d/e 163, p. 2.  The supplemental
petition also alleged that Walker committed aggravated battery in
violation of the mandatory condition when he struck another
inmate multiple times in the head while being housed at Adams
County Jail on July 19, 2019, which resulted in Walker being
charged with aggravated battery in Adams County, Illinois, Circuit
Court, Case No. 19-CF-598.  Id.

A final revocation hearing on the two petitions was set for
October 4, 2019.  On October 3, 2019, defense counsel, Daniel
Fultz, who was appointed pursuant to the Criminal Justice Act,
filed a motion to continue the revocation hearing, which was
granted in part.  The continuance was sought because the county
jail no longer allowed defense attorneys to meet with their clients on
Mondays and Tuesdays.  On October 4, 2019, the Court initially
held the final revocation hearing.  However, Mr. Fultz made an oral
motion to continue due to "Walker's transport, guideline issue, lack

of time to consult with [Walker] for preparation/witnesses, and [Walker's] agitated state." See Minute Entry dated 10/04/2019. The Court ultimately granted the continuance. The final revocation hearing was continued to December 5, 2019.

A month later, on November 4, 2019, Mr. Fultz filed a motion to continue the final revocation hearing because Mr. Fultz would be unavailable on December 5, 2019, due to a previously scheduled trial date in United States v. Haywood, et al., Case No. 18-cr-10036, in the United States District Court, Peoria Division, which involved numerous defendants and was tried over multiple days, including December 5, 2019. The motion to continue was granted, and the Court found that "Defendant Walker has knowingly and voluntarily waived his right to a revocation hearing 'within a reasonable time,' as is allowed under Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure." See Text Order dated 11/04/2019. On November 15, 2019, Walker filed a letter with the Court stating that he did not know Mr. Fultz would seek a continuance nor did he waive his right to a hearing within a reasonable time. See Letter, d/e 175.

On January 9, 2020, the Court held Walker's final revocation hearing. After being admonished of Walker's right to a revocation

hearing, Walker waived his right to the revocation hearing and

conceded that the Court could make a finding that he violated the

conditions of his supervised release as stated in the petition and

supplemental petition to revoke.  See Transcript, d/e 186, pp. 6-9.

During the exchange, the following occurred:

> THE COURT: So, Mr. Walker, are you waiving this right
> and doing so of your own free will?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Is there anything like medicine that you're
> on today that would affect your understanding of what's
> going on?
> THE DEFENDANT: No.
> THE COURT: Has anybody promised you anything or
> forced you to make this waiver?
> THE DEFENDANT: No, ma'am.
> THE COURT: Have you had enough time to talk about it
> with Mr. Fultz?
> THE DEFENDANT: I believe we have.
> THE COURT: Are you satisfied with his representation?
> THE DEFENDANT: Yes.

Id. at 8.

Following Walker's waiver, the Court made a finding by a

preponderance of the evidence that Walker violated his conditions of

supervised release by committing criminal trespass to a residence

on or about September 29, 2018, committing domestic battery on or

about July 18, 2019, and committing aggravated battery

on or about July 19, 2019.  Id. at 8-9.  Walker was sentenced to 50

months' imprisonment and a 3-year term of supervised release.  <u>See</u>
Revocation Judgment, d/e 178.

Walker appealed his revocation sentence, but the appeal was
dismissed pursuant Defendant's consent to dismiss, Federal Rule of
Appellate Procedure 42(b), and Seventh Circuit Rule 51(f).  <u>See</u>
Mandate, d/e 187.

On June 5, 2020, Walker filed the instant Motion to Vacate,
Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (d/e 189).
The Government filed a response (d/e 205) arguing that Walker is
not entitled to any relief.

## II. ANALYSIS

A prisoner claiming that his sentence violates the Constitution
or laws of the United States may move for the Court "to vacate, set
aside, or correct [his] sentence."  28 U.S.C. § 2255(a).  If the
prisoner is successful in proving a violation, "the court shall vacate
and set the judgment aside and shall discharge the prisoner or
resentence him or grant a new trial or correct the sentence as may
appear appropriate."  28 U.S.C. § 2255(b).  This is an extraordinary
remedy because a § 2255 petitioner has already had "an
opportunity for full process."  <u>Almonacid v. United States</u>, 476 F.3d

518, 521 (7th Cir. 2007).  Relief under § 2255 "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004).

An evidentiary hearing is not required "if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b); see also Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001).  In this case, an evidentiary hearing is not required.  After review of the pleadings, files, and records, the Court concludes that the motion may be resolved on the briefs and exhibits, including the affidavit submitted by former defense counsel.

Walker raised the following claims in his motion: (1) defense counsel obtained a continuance of the final revocation hearing without Walker's knowledge or consent; (2) defense counsel advised Walker to admit to the allegation that Walker had committed criminal trespass to a residence after the state offense had been dismissed; (3) defense counsel failed to show Walker three body camera videos recorded by Quincy Police Officers during Walker's

arrest for domestic battery, which recorded the victim denying Walker attacked her; (4) defense counsel failed to obtain a video recording from Adams County Jail of his fight with the other inmate; (5) defense counsel was unprepared for the revocation hearing and Walker was not able to testify at the hearing; and (6) defense counsel did not advise the Court that Walker had provided information to a Task Force Agent and defense counsel did not produce letters of recommendation on Walker's behalf.

All of Walker's arguments arise from a claim of ineffective assistance of counsel.  For a claim of ineffective assistance of counsel, Walker must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. Thomas v. Clements, 789 F.3d 760, 765 (7th Cir. 2015) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)).  To establish that counsel's performance was deficient, Walker "must show that counsel failed to act reasonably considering all the circumstances." Id. at 768.   "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)); see also United

<u>States v. Best</u>, 426 F.3d 937, 945 (7th Cir. 2005) ("Our review of the attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.").  As to the prejudice prong, Walker must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Thomas</u>, 789 F.3d at 771.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome.  That requires a substantial, not just conceivable, likelihood of a different result."  <u>Id.</u>

### A. The Continuance of Walker's Final Revocation Hearing Was Not Prejudicial.

Walker first argues that his defense counsel was ineffective because defense counsel asked for a continuance without Walker's knowledge or consent.  Pursuant to Federal Rule 32.1, "Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction."  Fed. R. Crim. P. 32.1(b)(2).  When considering the significance of a delay in

holding the revocation hearing, a court should consider the following factors: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right; (4) prejudice to the defendant; and (5) the reason why the defendant was in custody.  United States v. Rasmussen, 881 F.2d 395, 398 (7th Cir. 1989) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972) and United States v. Scott, 850 F.2d 316 (7th Cir.1988)).

On November 4, 2019, defense counsel filed a motion to continue the final revocation hearing because defense counsel had a conflict with the hearing date of December 5, 2019.  Defense counsel had a previously scheduled trial in United States v. Haywood, et al., Case No. 18-cr-10036, in the United States District Court, Peoria Division, which involved numerous defendants and was tried over multiple days, including December 5, 2019.  The Court finds that the reason for the delay justified the continuance. Defense counsel had another federal court commitment, which was a trial involving numerous defendants.  The difficulty in rescheduling the trial in the other case would have been great. Moreover, the delay was not substantial but instead was reasonable.  The Court granted the continuance and held Walker's

final revocation hearing on January 9, 2020.  The continuance

resulted in a delay of 35 days.  Walker did not show that the

continuance caused him any prejudice.  Therefore, Walker's first

argument for ineffective assistance of counsel fails.

### B. Dismissal of the State Charge for Criminal Trespass to a Residence Lacks Merit.

Walker's second argument is that defense counsel was

ineffective when defense counsel told Walker to admit to the

allegations in the petition to revoke that Walker had committed

criminal trespass to a residence after the state offense had been

dismissed.  Walker argues that if he had presented evidence on that

allegation, Walker would have been found not guilty.

The dismissal of the state charge of criminal trespass to

property does not render the allegation in the petition to revoke

moot.  The U.S. Sentencing Guidelines provide:

> Under 18 U.S.C. § 3563(a)(1) and 3583(d), a mandatory
> condition of probation and supervised release is that the
> defendant not commit another federal, state, or local
> crime. A violation of this condition may be charged
> whether or not the defendant has been the subject of a
> separate federal, state, or local prosecution for such
> conduct. The grade of violation does not depend upon the
> conduct that is the subject of criminal charges or of
> which the defendant is convicted in a criminal
> proceeding. Rather, the grade of the violation is to be

based on the defendant's actual conduct.

U.S.S.G. § 7B1.1, App. Note 1.  Moreover, the standard for proving

the allegation is less than is required for the state charge.  See

United States v. Mosley, 759 F.3d 664, 669 (7th Cir. 2014) ("To

revoke a defendant's supervised release under 18 U.S.C. §

3583(e)(3), the district court must find by a preponderance of the

evidence that the defendant violated the terms of his supervised

release.").

At the final revocation hearing, Defendant Walker admitted the

allegation of committing criminal trespass to property and

consented that a finding of the same could be made.  The Court

relied on Walker's voluntary waiver and consent.  The Court also

relied on the facts set forth in the petition to revoke (d/e 157) and

the violation memorandum (d/e 169), to which Walker himself said

he had no objection.  See Transcript, d/e 186, p. 9.

Walker states that Alexis Kelley and her boyfriend, Noah

Dietrich, were present at their residence when Walker entered

without permission.  Walker argues that the state charge of

criminal trespass to property was dismissed at the request of Ms.

Kelley and Mr. Dietrich, and, if the two were called to testify at the

revocation hearing, Walker would not have been found guilty.

Defense counsel submitted an affidavit in response to Walker's motion.  <u>See</u> Affidavit, d/e 205-6.  Defense counsel stated that he interviewed Mr. Dietrich by telephone, and Mr. Dietrich "hardly knew Mr. Walker, had not given [Walker] permission to come into his home, and would not have given [Walker] permission to come into his home."  <u>Id.</u> at 1-2.  Moreover, "if called to testify at the revocation hearing, that would have been the substance of [Mr. Dietrich's] testimony."  <u>Id.</u> at 2.  Such information is consistent with the Government's evidence.  Ms. Kelley and Mr. Dietrich were present at the revocation hearing as witnesses for the Government. Counsel for the Government states that the testimony of Ms. Kelley and Mr. Dietrich would have been consistent with their statements in the police reports.  The police reports state that Ms. Kelley was standing in her kitchen when she saw Walker run into the house through the back door, which led to the kitchen.  <u>See</u> Police Report, d/e 205-2, p. 1.  Walker yelled that Ms. Kelley's dog was attacking him, to which Ms. Kelley started yelling back.  <u>Id.</u>  Mr. Dietrich came in the kitchen and chased Walker out the door.  <u>Id.</u>  Ms. Kelley stated that "she had never seen Walker before and had never

given him permission to be in her residence." <u>Id.</u>  The police report also documents Mr. Dietrich's recollection of Walker entering the house.  <u>See</u> d/e 205-2, p. 6-7.

Walker has not presented sufficient evidence to show that defense counsel's performance was so deficient that it caused actual prejudice to Walker.  The Court finds that defense counsel's advice to accept the allegations did not cause actual prejudice to Walker.  Therefore, Walker's second claim for ineffective assistance of counsel fails.

### C. Body Camera Evidence Does Not Warrant Requested Relief.

Walker also argues that defense counsel failed to show Walker three body camera videos recorded by Quincy Police Officers during Walker's arrest for domestic battery.  The videos recorded the victim, Paula Johnson, denying that Walker attacked her.  Walker argues that if defense counsel had shown Walker the video recordings, he would not have admitted to the violation in the supplemental petition to revoke and the Court would have found him not guilty of the allegation.

The Government argues that it provided discovery to defense

counsel at the beginning of the revocation proceedings, which included the police reports and body camera footage.  The police report documented that Ms. Johnson denied at the scene that Walker had battered her, but, instead, Ms. Johnson said she left the house because she was mad, she tripped and fell as she was walking, and Walker helped her back to the house.  <u>See</u> Police Report, d/e 205-3, pp. 3-4.  The Government states that the body camera footage captured some of the interview with Ms. Johnson.

Defense counsel's office attempted to contact Ms. Johnson numerous times, but Ms. Johnson avoided the calls.  <u>See</u> Affidavit, d/e 205-6, p. 2.  Ms. Johnson allegedly made promises to appear and testify on Walker's behalf at the first revocation hearing, but she failed to appear.  <u>Id.</u>  Defense counsel knew that Ms. Johnson denied that any altercation had occurred based on the police reports.  <u>Id.</u>  However, defense counsel's office interviewed at least two independent witnesses, including a postal worker, who observed Walker "chase Ms. Johnson into the street and drag her by her hair back into a house."  <u>Id.</u>  Defense counsel believed the witnesses' testimony would be found more credible than Ms. Johnson's testimony.  <u>Id.</u>  These statements are consistent with

statements provided by two witnesses, one of whom was a postal worker, to the police as documented in the police reports.  <u>See</u> Police Reports, d/e 205-3, p. 3-12.

As stated in defense counsel's affidavit, defense counsel believes it would have constituted malpractice to advise Walker to have a contested revocation hearing as the allegations could not have been disproven.  <u>See</u> Affidavit, d/e 205-6.

The Court does not find that defense counsel's actions in not showing the video footage to Walker or presenting such evidence at the final revocation hearing were deficient or that presenting the evidence would have altered the outcome of the revocation hearing such that Walker suffered actual prejudice.  Walker's third argument for ineffective assistance of counsel also fails.

### D. Jail Video Recording Does Not Warrant Requested Relief.

The same is true regarding Walker's argument that defense counsel failed to obtain a video recording from the Adams County Jail of his altercation with another inmate at the jail.  The Court does not find that defense counsel was deficient in his efforts to obtain the video footage.  Defense counsel "made numerous

attempts to obtain the jail video from the Adams County Jail showing the altercation with Paula Johnson's paramour. [Defense counsel was] unable to obtain that footage, despite a subpoena, as the footage is only kept for 30 days." <u>See</u> Affidavit, d/e 205-6, p. 3. While preparing for the revocation hearing, counsel for the Government contacted the Adams County Jail to determine whether a video existed showing Walker battering the inmate. Counsel was told that video cameras were not in the area of where the fight occurred. Defense counsel's efforts to obtain jail video recordings were not deficient so as to render counsel's assistance ineffective.

**E. Defense Counsel Adequately Prepared for the Final Revocation Hearing**.

Walker also argues that if his defense counsel would have been prepared and if Walker were allowed to testify at the hearing, Walker believes he would not have been sentenced to 50 months' imprisonment. Walker complains that he tried to contact defense counsel but had difficulties.

Defense counsel attempted to meet with Walker in person at the Pike County Jail on October 1, 2019, but defense counsel was denied access after waiting 30 minutes. <u>See</u> Affidavit, d/e 205-6, p.

3.  That issue was raised by defense counsel in his motion to
continue (d/e 173) filed on October 3, 2019.  The Court addressed
the issue by Text Order dated October 3, 2019, which stated:

> The Court is extremely displeased with the Pike County
> Jail and its policy of refusing to allow defense attorneys
> to meet with their clients on Mondays or Tuesdays. As
> this case shows, the Pike County Jail's policy interferes
> with the Court's ability to manage its caseload in a timely
> manner.

Text Order Dated 10/03/2019.

Defense counsel's billing records detail telephone calls
between defense counsel and Walker throughout the revocation
proceedings as well as defense counsel's preparation for the final
revocation hearing.  See Matter Ledger Report, d/e 205-5, pp. 2-3.
Defense counsel spoke with Mr. Walker on several occasions
relating to "the contents of the police/violation reports that [defense
counsel] had received."  See Affidavit, d/e 205-6, p. 3.  Defense
counsel "spoke to [Walker] at length about the reports" on October
4, 2019, at the United States District Court for the Central District
of Illinois for Walker's final revocation hearing that was ultimately
continued.  Id.  Thereafter, defense counsel spoke to Walker on
January 2, January 8, and January 9, 2020, in preparation for the

final revocation hearing.  Id.

Moreover, Walker alleges that defense counsel did not have enough time to prepare for the final revocation hearing because defense counsel was in trial.  However, as noted by defense counsel, the trial in United States v. Haywood, et al., Case No. 18-cr-10036, ended on December 8, 2019.  See Affidavit, d/e 205-6, p. 4.  As evidenced by the billing records and statements made by defense counsel in his affidavit, defense counsel's preparation for the final revocation hearing was not deficient and did not cause any actual prejudice to Walker.

Walker also complains that he did not have the opportunity to testify at his final revocation hearing, which is inaccurate.  Walker exercised his right of allocation at his final revocation hearing and spoke before the Court rendered a sentence.  See Transcript, d/e 186, p. 19-20.  Prior to that, defense counsel made arguments on Walker's behalf, which defense counsel specifically stated were requested by Walker.  For example, defense counsel told the court that the inmate at the Adams County Jail was the ex-boyfriend of Mr. Walker's girlfriend and that the inmate had been taunting him in the Adams County Jail prior to the altercation.  Id. at 17-18.

The Court finds that defense counsel was adequately prepared for the final revocation hearing and was not ineffective.

### F. Failure to Produce Statements Made to a Task Force Agent and Character Letters Does Not Constitute Ineffective Assistance of Counsel.

At last, Walker argues defense counsel failed to inform the Court that Walker had provided statements to a Task Force Agent named Stinnett and failed to provide letters of recommendation on Walker's behalf.  Defense counsel does not recall speaking to a Task Force Agent.  See Affidavit, d/e 205-6, p. 4.  However, if a Task Force Agent had offered to help, defense counsel would not have turned away the help.  Id.

The Government filed an affidavit from Justin Stinnett, who was an investigator with the Adams County Sheriff's Office.  See Stinnett's Affidavit, d/e 205-7, p. 1.  Mr. Stinnett was in a vehicle transporting Walker from Pike County Jail to Adams County Jail on an unknown date, at which time Walker "advised [Mr. Stinnett] of some matters that in [Mr. Stinnett's] opinion had no law enforcement value."  Id.  Mr. Stinnett did not promise to contact Walker's defense counsel or advise the federal court of the information provided by Walker.  Id.  Mr. Stinnett also did not

speak to Walker's defense counsel regarding the information.  <u>Id.</u>
Based on the affidavits and arguments, the information Walker
provided to Mr. Stinnett would not have been helpful to Walker at
his final revocation hearing.  As such, Walker has failed to show
that his counsel was deficient or that failing to present the
information at the hearing caused Walker actual prejudice.

Defense counsel also stated he received a handful of letters on
behalf of Walker.  <u>Id.</u>  Defense counsel's routine practice is to
provide the letters to the U.S. Probation Office, who then provide
the letters to the U.S. District Judge prior to the final revocation
hearing.  <u>Id.</u>  Defense counsel does not have an independent
recollection of doing such, but he does not know why he would
stray from his routine practice.  <u>Id.</u>  If the letters were not sent to
the Court for review by either the U.S. Probation Office or defense
counsel, such actions were not deficient.  Regardless, Walker has
not shown any prejudice.  Therefore, Walker has failed to show
ineffective assistance of counsel by defense counsel.

## III. CERTIFICATE OF APPEALABILITY

If Walker seeks to appeal this decision, he must first obtain a
certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c) (providing that

an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability).  To receive a certificate of appealability on a ground decided on the merits, Walker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.; see also Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009).  The Court concludes that jurists of reason would not find Walker's claims or the Court's procedural ruling debatable.  Therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons stated, Petitioner Jason Walker's Motion to

Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255

Relief (d/e 189) is DENIED.  The Clerk is DIRECTED to notify

Walker of the denial.  The Court declines to issue a certificate of

appealability.  The Clerk is DIRECTED to close the administrative

civil case, 20-cv-3138.  Walker's Motion to Reverse Sentence (d/e

207), which reads like a reply brief and states the same reasons as

the § 2255 motion, is also DENIED for the reasons discussed

herein.

**ENTERED: June 1, 2021.**
**FOR THE COURT:**

_s/ Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**